Okay, my name is Rhoda Wilkinson Domingo. I'm here to represent the petitioner, Benod Tiwari. Pursuant to 8 CFR, facts determined by the immigration judge shall be reviewed, only determined whether the findings of the immigration judge are clearly erroneous. Here, both the immigration judge and the BIA made clearly erroneous findings. The BIA states the war between the Maoist and the government has ended. That's not true. I would like this Court to take judicial notice of the fact that there's still a war going on in Nepal about the existing government. Just yesterday, they had elections, and there was a bomb to try to disrupt the elections. And in November of last year, they couldn't agree on a constitution, and they had to adjourn. April of this year, they have a prime minister, but without a constitution. So I'd like you to recognize that the war has not ended. Secondly, the Board of Immigration and the immigration judge state that the family members remain in Nepal without incident. This also is not entirely true. Mr. Tiwari's wife and children are not targeted because they never worked for the monarchy. But besides that, the daughter is in the Philippines studying, the son is in a remote location studying, and the wife has left her home and is living with her brother-in-law. So that's hardly without incident. Thirdly, the Board of Immigration Appeals and the immigration judge found that seven threatening phone calls and a beating did not rise to the level of persecution. According to Canales-Vargas v. Gonzalez, this Court found that threats in and of themselves constitute persecution. In this case, Mr. Canales not only got threats, but he also got beaten up. Well, these threats were over an extended period of time. Yes, they were. But the more recent ones were at the very end. How would you characterize the threats? Were they specific? I mean, if you don't do this, we're going to harm you or we're going to ---- They were going to kill him or harm him and his family unless he quit. Did he actually testify that they said, we're going to kill you if you don't do what we want you to do? No, they told him that he needed to, they inferred, and they said that he needed to quit working for the monarchy and that he needed to give half of his salary to the Maoists. And he refused to do that for a long time. But at the end, the monarchy was giving up its power. He left just before that happened. He left in 2006. The monarchy dissolved at the end of December 2007, and the Maoists took over in 2008. But then it's, they haven't been stable. Any reasonable adjudicator would conclude that he faces a 1 in 10 chance of persecution in light of the fact that he received seven threatening phone calls. And he was ---- That's future. That's future persecution, right? Yeah. You were talking about past persecution. So are you, you are suggesting that the error was not finding past persecution. Both. But even if there was a past persecution, it would still appear, well, found in the future persecution. Okay. And so the persecution would be from the Maoists. Plus communists. And you've also got a cat claim. Yes. Okay. And if we look at the cat claim, is the government unwilling or unable to protect him if he would go back? Yes, because there's no government in power. It's sort of reached a paralysis. One analyst said that they have, they're just stuck because there's so many fractions. They can't reach an agreement about what government is going to be in power. What is it that you suggest to be directed specifically at him as opposed to his general unrest and targeting him? You're relying on the incidents of the past? Yes. I think it's known. He worked for many years for the monarchy. And so it's known that he worked for the monarchy. And he supports that. And he still supports the monarchy. He wants it reestablished with some democracy. I thought there was something in the record that they, even after he left, they had contacted him for it. Yes, they did. Looking for him. And that's why she moved to live with her brother-in-law. Let me ask you this. If we were to agree with you, if we were to agree with you on the facts here, that the record here compels a conclusion that he suffered past persecution, what we should do is grant the petition and remand so that the government can show changed country. Is that correct? Yes. The Board of Immigration agreed that the reason for the beating was politically motivated. Right. So the only issue is whether the beating rose to the level of persecution that is considered acceptable. I mean, he was rescued by a cab driver and taken to the hospital. If he hadn't been rescued, he might have been killed.  He might have been tortured. So it kind of doesn't make sense that they're saying that the beating doesn't rise to the level of persecution. I mean, how badly does he have to be beaten to qualify? Yes. As far as I know. I don't know. I don't know. I don't know. I'm sorry. No, that's fine. Yeah. I don't know. That's better than guessing. Is there any evidence in the record that he resides in Nepal? He's in Nepal, as far as I know. In the record, not outside.      I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. But I'll check on it. I brought the record with me. How about if I... All right. You want some time? Yes. For rebuttal? Yes, please. Thank you. All right. We're from the government. Good morning, Your Honors. May it please the Court. My name is Kosei Ugamori, and I represent the United States Attorney General in this case. This petition for review should be denied because the evidence does not compel the conclusion, one, of past persecution, two, well-founded fear of future persecution, and three, a clear probability of torture by or at the acquiescent government. The petitioner here alleges two types of harm. One are the threats that were made from 2001 to 2004, possibly 2005, by the Maoist groups, and second is the 2006 incident in which he was met with physical force by Maoist groups and suffered scratches and bruises. Now, nobody... He was rescued and he was like that person. I mean, they were taking him out to a field one day. He was being dragged, Your Honor. Yes. But at the same time he was being dragged, he was being told that he had to come with them so that he could teach them what he has learned through his experience in the police. And this is consistent with all of the threatening calls that were made before. They're not there to punish him. What they want is to get information from him. Well, they sort of beat him up a little bit. They did, but... To say, you know, come with us. You know, I don't know... That beating followed a series of phone calls. I don't know why you don't look at all of them together. Oh, but... As our case law is changing. Right. They must all be looked at together, Your Honor. And that's why the beating is diminished with respect to whether it rises to the level of persecution. Each of the threats were accompanied by a one-month deadline by which the alien had to comply. And he said he wasn't going to comply. And he did not comply. And nothing happened a month after, two months, three months, many months, until four years later, five years later, that he was met by these four persons. And even then, after so many years of threats, of vague threats to danger, stuff like that, what they did was they hit him in the face and they kicked him above the thighs. They dragged him. He suffered some bruises and scratches. Nobody should have to endure this type of harm. But the question here is whether the evidence compels the conclusion that such harms rose to the extreme level that is persecution. Persecution being more than the ordinary types of harms. Well, we said that threats by themselves can rise to a level of persecution. Certainly, Your Honor. In this court, in Lim v. INS, for example, this court has said that threats could rise to the level of persecution, but generally they do not. Threats are indicative of future persecution, but threats by themselves do not found a past persecution claim unless they are so menacing as to cause actual suffering or harm. And here, the threats, if we were to look at them, were not so menacing in the sense that, first of all, they all had a one-month deadline, but the deadline passed, nothing happened. So as this court stated in Lim v. INS, the threats were uniformly unpleasant but, quote unquote, hollow. And second, the threats were not particularly menacing as well. As Your Honor noted, the threats were not specific. The demands were specific. He must resign from the police. He must resign from his Democratic Party. As I recall, though, one of the threats that he gave was that a colonel gave him something about injury to his life or something, harm to his life. Well, what he said was anything could happen to your life. To your life. Yes, that was the closest it came to a death threat. However... Pretty... Well, certainly, Your Honor. But in the course of the entirety of the events, all these threats that continued, I mean, he told them that he would not comply on the phone. He verbally attacked them on one occasion and called them terrorists and murderers and that he would not do what this person was asking him to do. Did you address counsel Oakland? I think you did. There's a note in the current... In terms of the well-considered future. The fellow has been targeted. There's no doubt about him being targeted now. That's not true. Is that correct? Well, what... There's no nexus. The fact that he was targeted for his association with political opposition is monotone, correct? I would say no, Your Honor, because the threats have to be looked at in its entirety. I'm sorry. There was a nexus, though. The BIA didn't say he failed to show that he was targeted for his political... They assumed he was. Well, right. The BIA said it appears to be the case. So the BIA assumed that it was the case. Okay, so we're analyzing this case, not on subtleties, but there is no issue of nexus. The question is whether he has a well-founded fear in the future. Right. Because of his past... Yes, Your Honor. ...association with the Maoists, he was targeted. So now, if the fact is true that the Maoists continue to track down members of the loyal police force and that the Maoists engage in torture or violent acts, what's the response to why he doesn't have a well-founded fear in the future? Precisely because of these continuing threats, Your Honors. After he left the United States, he was told his wife was contacted by the Maoists, his brother was contacted by the Maoists, and they were both threatened. They were told that unless the petitioner returns to Nepal, that his family would face physical punishment, that his children might be kidnapped, and that his brother would face bad results. These were all threats that were made against the brother and the wife over the course of several years, and there's nothing in the record that states that anything happened. Furthermore, the wife was also required, according to the petitioner's asylum interview, to contribute money to the Maoists. But there's also nothing here that says that the wife actually did that. So, despite all of these threats, they continue to be unfulfilled, they continue to be hollow, and that's precisely why there's not a well-founded fear in this case, because the threats have proved that they're really not that interested in Nepal. Your counsel is arguing that the family was first. Why other than that the brother is not in the family? Well, yes, Your Honor. Most of what she states, respectfully, is outside of the record. It was not before the Board at the time. There's nothing to support the allegation that this person is outside, I'm sorry, that the children are outside of Nepal and the wife is in hiding. As far as the Board and immigration was given with the information, that's not the case, Your Honor. They were all in Nepal. And furthermore, the fact that the brother and the wife are not similarly situated is actually beside the point. The issue is that the threats involve them. If he did not return to Nepal, they would be punished. They would be harmed. He has not returned to Nepal. Nothing has happened to his family. And that's why the safety of the family is relevant in this case, Your Honor. I don't quite follow that. The Maoists are in Nepal. The target of the threats is to punish them. As far as the family, they are accepted. So they threaten the family. He goes back to save his family. He's no transfer from Pittsburgh. Reasonably, the violence that they're threatening would then be transferred to him unless he cooperates with them. Isn't that a reasonable inference? If I understand your question correctly, Your Honors, that would not be the case because what the Maoists want now, as different from the previous threats, is that what the Maoists want now is for him to return to Nepal. And he has not done that. According to his testimony, to head the Maoist Party. But it's consistent with their prior demands that he join the Maoist Party. Isn't that why they want to get people over there so they can force them to go over there? One way to force them is to say, if you don't cooperate and do what we want, we're going to harm your family. Yes, Your Honor. And that would be one way. But the fact is that that has not happened. They have threatened to harm his family for many years. And he has not complied. He has defied them. And nothing has happened. So, again, while the threats are uniformly unpleasant, they're hollow. They do not compel the conclusion of past persecution or indicate a reasonable likelihood of future harm. Let me ask you this. If we were to disagree with you on future persecution, is there anything left to be done? Yes. The case should be remanded to the BIA. What happens then? Well, the board would most likely remand the case of further fact-finding, particularly because conditions have changed, appears to have changed, in Nepal. Things more stable now, maybe? It is unclear. This is not in the record, but the Maoists are no longer a designated terrorist organization. And the country reports do indicate conflict. But it appears less severe than it was in the 2008 reports, where there are many reports of torture and abuse by both sides. Actually, more by the state side than the Maoists. In particular, with disappearances and torture and the like. It goes back and forth, Your Honor. Just in general, the war did end, the civil war, I'm sorry, the war did end between the Maoists and the government. There was. And so there is no war at this time. I believe what Petitioner's counsel may be referring to is the conflict or the continuing situation in Nepal. But the war has ended. And also, the brother, his letter is signed Kathmandu, so he is in the same locale as the petitioner was in this case. Okay, so. Thank you. Thank you, Your Honor. We have a few minutes for rebuttal. One thing, the beating took place on May 23rd, 2006, and he left on June 26th, 2006, about a month later after the beating. And the country reports state that Maoists committed torture. The Young Communist League has been skilled at doing torture and trained in sophisticated weapons. And that's who he's afraid of. It's kind of an extremist part of the Maoist communists, I believe. In order to establish future persecution, he must demonstrate that he holds a political opinion. His political opinion is known to the persecutors and the persecution will be on account of his political opinion. Well, as Judge Fisher pointed out, the board assumed that. Is that right? And the Board of Immigration Appeals says that they assume that he was, it was motivated for political reasons. Yes. Oh, yes, and you said that. So, Mr. Tewari fled shortly after being beaten and he applied for political asylum immediately. He did it improper. There was a lot of mix-up about that because he got a student to translate for him and everything wasn't translated correctly. So he was timid about speaking, I think. This is what I think because there were so many misunderstandings at the asylum office and then again in court. Family unity is the cornerstone of immigration law. The way that this family can be reunited is for this court to grant asylum or remand with instructions for that. Thank you, Counsel. Thank you. Thank you, Counsel. The matter is submitted at this time.
judges: Quist, Fisher, Paez